**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO.:**

CALEB WISTAR and ERNEST MAYEAUX,
on their own behalf, and on behalf of those
similarly situated,

       Plaintiffs,

v.                                                                        **CLASS ACTION**

RAYMOND JAMES FINANCIAL
SERVICES, INC., and RAYMOND JAMES
FINANCIAL SERVICES ADVISORS, INC.,

       Defendants.
_____/

**CLASS ACTION COMPLAINT**

Plaintiffs, CALEB WISTAR ("Wistar") and ERNEST MAYEAUX ("Mayeaux," and collectively, "Plaintiffs"), on their own behalf and on behalf of those similarly situated (collectively, the "Customers" or "Class Members"), through undersigned counsel, sue Defendants RAYMOND JAMES FINANCIAL SERVICES, INC. ("RJFS") and RAYMOND JAMES FINANCIAL SERVICES ADVISORS, INC. ("RJFSA," and collectively, "Raymond James"), and allege the following based upon personal knowledge as to the allegations regarding themselves, and upon information and belief as to the other allegations:

**INTRODUCTION**

1.     This lawsuit is brought as a class action by and on behalf of Raymond James' Customers that were charged an unauthorized and unreasonable "Processing Fee," sometimes labelled as a "Misc. Fee," by Raymond James when it executed trades for these Customers in

their "Passport Investment Account Program" (hereinafter the "Passport Account") – Raymond James's commission-free account.

2.     As an alternative to a traditional commission-based account wherein customers pay a commission to Raymond James each time a trade or transaction is completed, Raymond James offered its Customers a Passport Account program.  This program is described by Raymond James as an "asset-based fee account program where you pay an annual Advisory Fee for the advice and services...."  Notably, "[t]his fee is based on the level of assets in your [Passport] Account, independent of the level of trading activity."  (*See* p. 4 of Wistar's Passport Non-Discretionary Client Agreement ("Wistar's Passport Agreement") attached hereto as **Exhibit "A"**; and p. 5 of Mayeaux's Passport Non-Discretionary Client Agreement ("Mayeaux's Passport Agreement") attached hereto as **Exhibit "B"**).[1]

3.     Thus, pursuant to the terms of the Passport Account, customers who opted for the Passport Account were not supposed to be charged any commissions on individual trades, but rather, would be charged a single "Advisory Fee" (payable quarterly) based on the total value of the qualifying assets in the Passport Account.  This may be an attractive option for customers who anticipate conducting a high volume of trading.

4.     Customers who opened a Passport Account were required to sign a "Passport Non-Discretionary Client Agreement" or "Passport Discretionary Client Agreement" ("Passport Agreement"),[2] and through this Passport Agreement, also agreed to pay Raymond James "for transaction execution and clearing services a flat fee per transaction … hereinafter referred to as a 'Processing Fee'." (emphasis added).  (*See* p. 1, Wistar's Passport Agreement, Ex. A, and p. 1,

---

[1]     Personal and confidential information has been redacted.
[2]     The Passport Agreement is offered by Raymond James to Customers through a "Discretionary" and "Non-Discretionary" platform, which simply delineates whether Raymond James had discretion to manage the account and conduct transactions.

**RICHMAN GREER, P.A.**
Miami ● West Palm Beach

Mayeaux's Passport Agreement, Ex. B).  Prior to April 2, 2012, this Processing Fee ranged from $30.00 to $50.00 depending on the type of security involved in the transaction.  On and after April 2, 2012, this Processing Fee ranged from $9.95 to $30.00.  The Processing Fee is in addition to "a charge per transaction for handling...."  (*See* p. 2, Wistar's Passport Agreement, Ex. "A"; and p. 2, Mayeaux's Passport Agreement, Ex. "B").

5.      The Passport Agreement makes clear that "Processing Fees are not commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions."  (emphasis added) (*See* p. 2, Wistar's Passport Agreement, Ex. A, and p. 2, Mayeaux's Passport Agreement, Ex. B). Thus, Processing Fees were defined by Raymond James as a fee to reimburse Raymond James for the execution and clearing of trades, and not as a fee that constituted a commission in a commission free account, or other remuneration to Raymond James.

6.      In reality, however, the "expenses incurred in facilitating the execution and clearing" of a Customer's transactions were significantly lower than the Processing Fees charged by Raymond James.  In fact, it was Raymond James & Associates ("RJA"), a sister company, that executed and cleared trades for RJFS and RJFSA.[3]  Accordingly, and upon information and belief, the cost to Raymond James for executing and clearing trades was no more than $5.00. Therefore, the Processing Fee charged by Raymond James contained up to a 1000% mark-up for profit in some instances (i.e. when a Customer was charged a $30.00 Processing Fee), and a significant mark-up in all instances, and as such, was transaction based remuneration to

_____

[3] See RJA's Statement of Financial Condition, Note 7, which provides: "Pursuant to formal clearing agreements, we clear trades for RJFS, RJFSA and other affiliated entities," attached hereto as **Exhibit "C."**

**RICHMAN GREER, P.A.**
Miami • West Palm Beach

Raymond James – an unauthorized commission in an account that is supposed to be commission-free.

7.     Because Customers only agreed to pay for "expenses incurred in facilitating the execution and clearing" of their trades, and contractually disavowed any obligation to pay a transaction-based commission, RJFSA, the contracting party with the Customer, breached the Passport Agreement every time it charged their Passport Account Customers this "Processing Fee."

8.     Further, as the appointed broker dealer under the Passport Agreement, RJFS owed a duty of care to act in accordance with the standard of care used by other broker-dealers in the community. That duty requires that RJFS to only charge Customers a reasonable fee for their services, and is evidenced by FINRA Rule 2122 (formerly NASD Rule 2430), which requires that "charges" be "reasonable".   That duty also requires that RJFS act in a generally honest and forthright manner – to not, obviously, charge a disguised commission in a commission-free account – as evidenced by FINRA Rule 2010 (formerly NASD Rule 2110), which mandates that "[a] member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade."

9.     Because Raymond James charged an unauthorized and unreasonable "Processing Fee" for trades, and because this "Processing Fee" was far in excess of, and not directly or reasonably related to, the "expenses incurred in facilitating the execution and clearing" of trades, contractual and common law duties owed to Customers were breached.

## **JURISDICTION AND VENUE**

10.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction

-4-

because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a resident of a different state than Raymond James.

11.     This Court has personal jurisdiction over each of the Defendants because they are all Florida corporations, having their principal place of business in Pinellas County, Florida. Additionally, Defendants are engaged in substantial and not isolated activity within this State. Further, the causes of action brought in this Complaint arise from Defendants: (a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (b) committing a tortious act within this state; and/or (c) breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here (and are thus deemed to reside here pursuant § 1391(c)(2) and (d).

## PARTIES

13.     Plaintiff Wistar is a resident of the State of New York who is domiciled in Albany County.  Wistar became a Passport Account Customer on or about September 28, 2015, by executing a Passport Agreement with RJFSA.  *See* Ex. "A."  On numerous occasions, Wistar was charged the unauthorized and unreasonable "Processing Fee" that is subject of this lawsuit.  A true and correct copy of a trade confirmation for Plaintiff Wistar, dated December 8, 2015, is attached hereto as **Exhibit "D"**; it shows that Plaintiff Wistar was charged a $9.95 Processing Fee (designated on the trade confirmation as a "Misc" fee).[4]

---

[4]   Personal and confidential information has been redacted.

RICHMAN GREER, P.A.
Miami • West Palm Beach

14.     Plaintiff Mayeaux is a resident of the State of Louisiana who is domiciled in Avoyelles Parish.  Mayeaux became a Passport Account Customer on or about April 15, 2011, by executing a Passport Agreement with RJFSA. *See* Ex. "B."   On numerous occasions, Mayeaux was charged the unauthorized and unreasonable "Processing Fee" that is subject of this lawsuit.  A true and correct copy of a trade confirmation for Plaintiff Mayeaux, dated August 4, 2015, is attached hereto as **Exhibit "E"**; it shows that Plaintiff Mayeaux was charged a $9.95 Processing Fee (designated on the trade confirmation as a "Misc" fee).[5]

15.     Defendant RJFS is a Florida Corporation which maintains its principal place of business in St. Petersburg, Pinellas County, Florida, and is authorized to do business in this state. RJFS is a full service broker-dealer registered with the Securities and Exchange Commission, which allows it to conduct trades on behalf of customers.  Accordingly, RJFS engages in the business of providing securities brokerage services to individuals and corporate clients.  Among other organizations, RJFS is a member of the Financial Industry Regulatory Authority ("FINRA").

16.     Defendant RJFSA is a Florida Corporation which maintains its principal place of business in St. Petersburg, Pinellas County, Florida, and is authorized to do business in this state. RJFSA is a federally registered investment advisor with the SEC. Since RJFSA is not a broker-dealer (and therefore cannot conduct trades on behalf of customers), its primary affiliation is with RJFS, which is expressly appointed and acts as the sole and exclusive broker-dealer with respect to the execution of purchase and sale transactions in Passport Accounts to which RJFSA is a party.

---

[5]  Personal and confidential information has been redacted.

17.     RJFS and RJFSA are affiliated and related companies that are all wholly owned subsidiaries of the publicly traded company Raymond James Financial, Inc.

18.     The Raymond James family of companies was founded in 1962 and became public in 1983.  Raymond James Financial, Inc., is currently traded on the New York Stock Exchange under the symbol "RJF".  According to its website, (www.raymondjames.com), the holding company, "through its three broker/dealer subsidiaries… has more than 6,200 financial advisors serving approximately 2.6 million accounts in more than 2,600 locations throughout the United States, Canada, and overseas."   In total, the holding company has client assets of approximately $483 billion.

## CLASS ACTION ALLEGATIONS

19.     Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

20.     The proposed Class is defined as:

All former and current Customers in the United States and its territories who executed a "Passport Agreement" with RJFSA and were charged a "Processing Fee" or "Misc. Fee" at any time during the applicable statute of limitations (the "Class Period").

21.     Excluded from the Class are Raymond James, its parents, subsidiaries, affiliates, officers and directors, any entity in which Raymond James has a controlling interest, all Customers who make a timely selection to be excluded, governmental entities, all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and any of the foregoing's legal heirs and assigns.

22.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

-7-

23.     Plaintiffs do not currently know the exact number of Class Members or their identities because such information is in the exclusive control of Raymond James and can only be ascertained by review of its records.  However, Plaintiffs believe that there are thousands of Class Members, and that the Class Members are sufficiently numerous and geographically dispersed so that joinder of all Class Members is impracticable.   Plaintiffs further believe that Raymond James charged the "Processing Fee" or "Misc. Fee" on tens of thousands of occasions during the Class Period.  Accordingly, it is believed that the amount in controversy easily exceeds $5,000,000.00.

24.     The claims of Plaintiffs are typical of the Class, in that Plaintiffs, like all Class Members, were charged this unauthorized and unreasonable "Processing Fee," often designated as a "Misc. Fee," on numerous occasions. The Plaintiffs, like all Class Members, signed contractual agreements containing the same operative language at issue in the lawsuit. Further, the Plaintiffs, like all Class Members, were owed the same exact duties with respect to the Passport Accounts. The factual and legal basis of Raymond James's misconduct is common to all Class Members and resulted in injury to all Class Members. Further, RJFS and RJFSA, along with their sister company RJA, are affiliated and related entities and had a contractual relation with each other with regard to the Passport Account program.  Specifically, RJA "administered" and cleared the Passport Account program for the Defendants.  The claims of Plaintiffs and the Class Members arose out of the same series of transactions or occurrences, that is: the unreasonable and unauthorized charging of the Processing Fee under the Passport Agreements and the duties owed to Customers thereunder.

RICHMAN GREER, P.A.
Miami • West Palm Beach

25.    Pursuant to Rule 23(b)(3), there are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class Members, including whether Customers were:

a.    Charged a "Processing Fee" or "Misc. Fee" that exceeded its direct and actual costs in executing and clearing (i.e. processing) Class Members' transactions;

b.    Charged a "Processing Fee" or "Misc. Fee" that was unreasonable;

c.    Injured by breach of their agreements by the charging of an unauthorized "Processing Fee" or "Misc. Fee" that was not attributable to any specific cost or expenses incurred in executing and clearing the trade or determined by any formula applicable to all Customers;

d.    Injured by the negligent charging of an unreasonable "Processing Fee" or "Misc. Fee" that was not attributable to any specific cost or expenses incurred in executing and clearing the trade, or determined by any formula applicable to all Customers; and

e.    the appropriate measure of damages sustained by Plaintiff and other Class Members.

26.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense, and risk of inconsistent rulings that numerous individual actions would cause.  Class treatment will also permit the adjudication of relatively small claims by Class Members who otherwise might not be able to afford to litigate their claims individually.  This class action presents no difficulties in management that would preclude maintenance as a class action.

27.    This forum is particularly desirable for the prosecution of this class action because Raymond James maintains offices in this District, and presumably maintains many of those corporate records which are particularly germane to this action here.  Raymond James operates office complexes throughout this District, including in the cities of Miami, Fort Lauderdale and

RICHMAN GREER, P.A.
Miami ● West Palm Beach

West Palm Beach. As a result of the foregoing, litigating on a class action basis in this forum will likely decrease the cost of discovery and prosecution, generally.

28.     Plaintiffs have suffered the harm alleged on behalf of the Class, and have no interests antagonistic to the interests of any other Class Members.  They are committed to the prosecution of this action and have retained counsel experienced in the prosecution of class actions, and in complex commercial actions in particular.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class Members. Plaintiffs are not aware of any other pending litigation concerning this controversy that involves Class Members.[6]

29.     Finally, the Class is readily definable and is one for which records likely exist in the files of Raymond James.

## COMMON FACTUAL ALLEGATIONS

*"Handling Fees", "Processing Fees," "Misc. Fees", "Add'l. Fees" or Other Fees Must be Reasonable and Must Be Directly Related To a Specific Cost Or Expense Incurred In Processing The Customer's Trade.*

30.     On September 7, 2011, FINRA issued a news release, through which it publicized sanctions it levied against five broker/dealers for charging "handling fees" that served as a source of additional transaction based remuneration.  In those 5 instances, the amounts charged "were far in excess of the cost of the handling-related services the firms provided."  (*See* FINRA's Sept. 7, 2011 News Release, "FINRA Fines Five Broker Dealers for Improper Handling Fees", attached hereto as **Exhibit "F."**).

---

[6] There is a related case styled as: *Jyll Brink, on her own behalf, and on behalf of those similarly situated, v. Raymond James & Associates, Inc.*, Case No. 15-60334-CIV-DIMITROULEAS/SNO, currently pending in this District before the Honorable William P. Dimitrouleas.

RICHMAN GREER, P.A.
Miami ● West Palm Beach

31.     As FINRA's chief of enforcement explained: "firms cannot disguise commissions by improperly describing them as charges for ancillary services."  In each of the 5 cases, FINRA found that the fees charged were not reasonable in that they did not bear any reasonable relation to any direct handling charges or services incurred in the processing of transactions.

32.     A few months later, on January 31, 2012, in an annual letter sent to all FINRA members (the so-called "FINRA Priorities Letter,") FINRA, referencing the five sanctions from the previous year, made clear that "any miscellaneous charges must be reasonable and related to the services performed."  (*See* p. 7, FINRA 2012 Priorities Letter, attached hereto as **Exhibit "G.")**

33.     FINRA's position on this issue is not dependent on how the wrongfully extracted fee is labeled (i.e. "Misc.", "Handling Fee", "Processing Fee," "Ticket Fee" etc.), but instead, whether it is reasonable.  For example, in late 2013, FINRA fined another broker/dealer for charging its customers a $40 fixed fee for "handling," sometimes reflected as "Add'l Fee." FINRA found that the fee "was fixed at $40 per transaction and was not attributable to any specific cost or expense incurred by the Firm in executing the trade, or determined by any formula applicable to all customers," and was nothing more than "a source of additional transaction-based remuneration or revenue to the Firm, in the same manner as a commission…." (*See* p. 3, FINRA Letter of Acceptance, Waiver, and Consent in Case No. 2012032027401, attached hereto as **Exhibit "H."**)

### Raymond James' "Processing Fee" is Neither Reasonable, Nor Agreed To By Customers

34.     To open a Passport Account, Customers were required to execute a Passport Agreement.  The Passport Agreement is complimented by a "Client Agreement", which together govern the newly formed relationship.  (*See* p. 4, Wistar's Passport Agreement, Ex. A, and p. 4,

Mayeaux's Passport Agreement, Ex. B, in the section titled "Entire Agreement"). For Customers that executed Passport Agreements with RJFSA, the "Client Agreement" was between the Customer and RJFSA, and RJFS was expressly appointed as the "sole and exclusive broker with respect to the account," as RJFSA was not a licensed broker/dealer.

35.     For purposes of compensating RJFSA for "investment advisory services," the Passport Agreement places investments into three different categories: (1) "Fee Investments," (2) "Fee Exempt Investments," and (3) "Administrative Only Investments." RJFSA is compensated differently depending on which category a particular investment falls in.

36.     Most of the investments made by a customer in a Passport Account will fall into the "Fee Investments" category. For "Fee Investments," the compensation is based on a percentage of the total "Account Value," the sum of all investments contained in the account, and calculated at the end of every quarter. Thus, the customer is required to pay RJFSA an "Advisory Fee" once a quarter equal to an agreed upon percentage of that client's total "Account Value." For example, the default percentages in the Passport Agreement as of the date Plaintiff Mayeaux signed his Passport Agreement were as follows:[7]

| Account Value* | Quarterly Fee | Annualized Fee |
|---|---|---|
| Passport Fee Investments: | | |
| First   $200,000 | 0.4375% | 1.750% |
| Next   $300,000 | 0.3750% | 1.500% |
| Amounts over $500,000 | 0.2500% | 1.000% |

* The minimum Account value of Fee Investments is $25,000.

---

[7] See Mayeaux Passport Agreement, Ex. B, at p. 9 of 10. The language at issue in this Complaint is included in all Class Member's Passport Agreements.

RICHMAN GREER, P.A.
Miami • West Palm Beach

37.     The Passport Account makes clear that there will be a quarterly Advisory Fee paid based on the value of the account <u>in lieu</u> of any transaction based commissions.  To that end, the Passport Agreement includes the following (highlighting added)[8]:

**WHAT YOU SHOULD KNOW ABOUT FEE-BASED ACCOUNTS**

Passport is an asset-based fee account program where you pay an annual Advisory Fee for the advice and services provided by your Investment Adviser Representative as a part of your advisory relationship. This fee is based on the level of assets in your Account, independent of the level of trading activity.  By deciding to pay a fee based on services provided rather than transactions, you should understand that the fee may be higher than the cost of a commission alternative during periods of lower trading activity.

38.     The Passport Agreement even contains a section entitled "Additional Considerations," which provides further guidance to a customer who may be unclear as to the nature of the Passport Account and its fee structure, and advises (highlighting added) as follows:[9]

**ADDITIONAL CONSIDERATIONS**

\*        \*        \*

You should also consider whether it would be better for you to pay separately for each trade you execute and each product and service you use.

39.     Finally, and in case any doubt was left about the nature of the fee structure for the Passport Account, the Passport Agreement also refers customers to the Raymond James Financial Services Advisors, Inc. Firm Brochure ("Firm Brochure").

40.     The Firm Brochure explains that "[t]his account offers you the ability to pay an asset based advisory fee and a nominal processing fee (also described as a transaction charge) <u>in lieu of a commission for each transaction</u>."  (Emphasis added).  (*See* p. 4 of the Firm Brochure, attached hereto as **Exhibit "I."**).

41.     The Passport Agreement also provides that in addition to the Advisory Fee and a handling fee, the customer will pay a "Processing Fee" to the appointed broker-dealer (RJFS

---

[8] *Id*. at p. 5 of 10.
[9] *Id*.

RICHMAN GREER, P.A.
Miami ● West Palm Beach

under the RJFSA Passport Agreement) "for transaction execution and clearing services." The Passport Agreement contains a schedule of the so-called "Processing Fees" under the heading "Schedule of Charges for Execution and Clearing of Transactions in Passport Fee Investments." This language, as it appears in Mayeaux's Passport Agreement, for example, is as follows (highlighting added): [10]

**Securities Brokerage Remuneration** - Client agrees to pay RJFS for transaction execution and clearing services a flat fee per transaction in Fee Investments based on the type of security involved (hereinafter referred to as "Processing Fee"). Commissions will be charged on the sale of any investments which are Fee Exempt Investments, with the exception of the sale of any securities originally purchased as new or secondary offerings.

| Schedule of Charges for Execution and Clearing of Transactions in Passport Fee Investments | |
|---|---|
| Security Type | Processing Fee |
| Stocks: Listed and OTC / Closed End and Exchange Traded Funds | $30.00 |
| Mutual Funds (applicable to purchases only) | $30.00 |
| Unit Investment Trust / Real Estate Investment Trust | $30.00 |
| Preferred Stock | $30.00 |
| Option Contracts | $50.00 |
| Bonds: Government, Corporate, Municipal, & Mortgage Backed | $50.00 |

42.     The Passport Agreement expressly notes that "Processing Fees are not commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions."

Client understands the Investment Adviser Representative will not share in any Processing Fee. Processing Fees are not commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions. The actual expense incurred by RJFS for any given transaction may be less than or greater than the Processing Fee. Additionally, Client understands that no-load funds may be transacted directly with the sponsoring fund organization with no Processing or Advisory Fee.

43.     In sum, Customers who signed the Passport Agreement agreed to: (1) pay, in lieu of commissions, an Advisory Fee on a quarterly basis based on a percentage of the account's "Fee Investments" overall value; and (2) pay a "Processing Fee" only to the extent necessary to reimburse Raymond James for the actual costs of executing and clearing transactions. Correspondingly, Raymond James agreed to: (1) accept as payment for its services an Advisory Fee based on a percentage of the total value of the Customer's account's "Fee Investments," "in

---

[10]  *Id.* at p. 1 of 10 through p. 2 of 10.

**RICHMAN GREER, P.A.**
Miami • West Palm Beach

lieu of" being paid any transaction based commission or remuneration; and (2) only charge Customers a fee in the amount necessary to reimburse it for any costs or expenses actually incurred, and directly related to, the execution and clearing of a Customer's transactions.

44.     By charging a "Processing Fee" per transaction which was far in excess of the actual cost associated with executing and clearing of Customers' transactions, Raymond James took what FINRA has described as a "disguised commission" – a per-transaction based remuneration in direct violation of both the spirit and express terms of the Passport Agreement.

45.     Additionally, and by virtue of RJFS' position as a broker-dealer, their professional skill and ability, and the level of confidence and care imposed upon other broker-dealers in similar positions, RJFS owed Customers a duty of care that, as FINRA puts it, requires nothing less than fair dealing.

46.     FINRA has made it clear that there can be no mark-up on a transaction based fee; otherwise, it constitutes a firm commission.  *See e.g.*, Ex. "F." (FINRA Sept. 7, 2011 News Release).

47.     Therefore, under both the spirit and express terms of the Passport Agreement *and* under the common law standard of care owed to Customers, Raymond James could not charge a "Processing Fee" that exceeded its direct and actual costs in executing and clearing Customers' transactions.

48.     Upon information and belief, the actual cost and expenses incurred by Raymond James in executing and clearing trades for its customers is less than $5.00 – similar to that of comparable financial institutions.

49.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

RICHMAN GREER, P.A.
Miami ● West Palm Beach

<u>COUNT I</u>
**(Breach of Contract – Plaintiffs Wistar and Mayeaux against RJFSA)**

50.     Plaintiffs Wistar and Mayeaux re-allege paragraphs 1 through 49, above, as if fully set forth herein.

51.     Plaintiffs Wistar and Mayeaux bring this breach of contract claim on their own behalf and on behalf of all Class Members who executed a Passport Agreement with RJFSA under which they agreed to pay a Processing Fee, sometimes designated as "Misc.", "for transaction execution and clearing services," to cover the expenses incurred "in facilitating the execution and clearing of client's portfolio transactions," and who were charged such a fee at any time within the class period.

52.     Specifically, the Passport Agreement executed by Customers with RJFSA appointed RJFS as the Class Members' sole and exclusive broker: "RJFS is hereby appointed by Client as the sole and exclusive broker with respect to the referenced account for the execution of purchase and sale transactions" (Exhibits "A" and "B" at p. 1).  Moreover, the Class Members who executed a Passport Agreement with RJFSA agreed to pay RJFS the Processing Fee for transaction execution and clearing services (Exhibits "A" and "B" at p. 1).

53.     The Passport Agreement executed by Customers with RJFSA appoints RJA as the clearing agent in the execution of all transactions under the Passport Agreement. (Exhibits "A" and "B" at p. 2).

54.     Plaintiffs Wistar and Mayeaux, and Class Members who executed a Passport Agreement with RJFSA, expressly agreed to reimburse RJFS through payment of certain fees associated with the execution and clearing of trades, but only to the extent that RJFS actually incurred expenses directly related to the execution and clearing of their trades. (*See* Exhibits "A" and "B").

**RICHMAN GREER, P.A.**
Miami ● West Palm Beach

55.     As set forth more fully above, the expense actually incurred by RJFS "for transaction execution and clearing," and in "facilitating the execution and clearing of a client's portfolio transactions" is believed to be under $5.00, substantially lower than the amount charged.

56.     RJFSA breached its Passport Agreements by charging Plaintiffs Wistar and Mayeaux, and Class Members, a "Processing Fee," often designated as "Misc.", that was not an authorized charge under the Passport Agreement and that bore no reasonable relationship to the direct and actual costs in executing and clearing the "Fee Investment" transactions (which, upon information and belief, was less than $5.00).

57.     For example, Plaintiff Wistar was charged a "Processing Fee" (designated as "Misc.") of $9.95 when trading "Fee Investments," despite the fact that the direct and actual cost in executing and clearing his transactions was under $5.00.  (Exhibit. "D").

58.     Likewise, and as an example, Plaintiff Mayeaux was charged a "Processing Fee" (designated as "Misc.") of $9.95 when trading "Fee Investments," despite the fact that the direct and actual cost in executing and clearing his transactions was under $5.00.  (Exhibit "E").

59.     Plaintiffs Wistar and Mayeaux and Class Members have performed all, or substantially all, of the obligations imposed on them under their Passport Agreements with RJFSA.

60.     Plaintiffs Wistar and Mayeaux and Class Members have suffered damages as a result of RJFSA's breaches of the Passport Agreements.

## COUNT II
**(Negligence – Plaintiffs Wistar and Mayeaux against RJFS)**

RICHMAN GREER, P.A.
Miami • West Palm Beach

61.     Plaintiffs Wistar and Mayeaux re-allege paragraphs 1 through 49, above, as if fully set forth herein.

62.     Plaintiffs Wistar and Mayeaux bring this negligence claim on behalf of themselves and Class Members who were charged a "Processing Fee", often designated as "Misc." at any time within the class period.

63.     The Passport Agreement executed by Customers with RJFSA appointed RJFS as the Class Members' sole and exclusive broker: "RJFS is hereby appointed by Client as the sole and exclusive broker with respect to the referenced account for the execution of purchase and sale transactions" (Exhibits "A" and "B" at p. 1).  Moreover, the Class Members who executed a Passport Agreement with RJFSA agreed to pay RJFS the Processing Fee for transaction execution and clearing services (Exhibits "A" and "B" at p. 1).

64.     The Passport Agreement executed by Customers with RJFSA appoints RJA as the clearing agent in the execution of all transactions under the Passport Agreement. (Exhibits "A" and "B" at p. 2).

65.     As a securities broker/dealer, RJFS owed Customers a duty of care in accordance with the standard of care used by similar professionals in the community under similar circumstances.  That includes, but is not limited to, a duty of fair dealing and to act in the best interests of its Customers without regard to its own financial or other interests.

66.     Although exchange rules might not provide for a private right of action in tort, they do set forth the standards of care that are expected of broker-dealers such as RJFS with regard to the imposition of fees.  Two such examples are FINRA Rule 2122 (formerly NASD Rule 2430) and FINRA Rule 2010 (formerly NASD Rule 2110), described *supra.*

RICHMAN GREER, P.A.
Miami • West Palm Beach

67.     RJFS breached its duty, and the standard of care expected from similar professionals in the community under similar circumstances and as proscribed in FINRA Rule 2122 (formerly NASD Rule 2430) and FINRA Rule 2010 (formerly NASD Rule 2110), by charging an unreasonable and excessive "Processing Fee", often designated as "Misc.", that bore no reasonable relationship to its direct and actual costs in executing and clearing Customers' transactions, and that constituted a disguised commission in a commission-free account.

68.     For example, RJFS charged Plaintiff Wistar a "Processing Fee" (designated as "Misc.") of $9.95 when trading "Fee Investments," despite the fact that its direct and actual cost in executing and clearing his transaction was under $5.00.  (Exhibit "D").

69.     Likewise, and as an example, RJFS charged Plaintiff Mayeaux a "Processing Fee" (designated as "Misc.") of $9.95 when trading "Fee Investments," despite the fact that its direct and actual cost in executing and clearing his transaction was under $5.00.  (Exhibit "E").

70.     The "Processing Fee" that RJFS charged Class Members so grossly exceeded its direct and actual costs incurred in executing and clearing Customers' transactions that its markup reached as high as 1000% in some instances.  RJFS simply retained the markup as an additional, unauthorized commission—in addition to the quarterly fee charged on the "Fee Investments" in the Passport Account.

71.     As a matter of law, it is unreasonable and a breach of RJFS's duties owed to its Customers to charge a markup on a fee that is merely intended to reimburse RJFS for the actual out of pocket expense associated with executing and clearing trades.

72.     As a direct and proximate result of the foregoing, Plaintiffs Wistar, Mayeaux, and all Class Members have suffered damages.

RICHMAN GREER, P.A.
Miami ● West Palm Beach

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all other similarly situated, pray for relief and judgment as follows:

A.     Certifying the proposed Class and approving Plaintiffs as class representatives;

B.     Appointing Richman Greer, P.A., The Law Offices of Place & Hanley, LLC, and Blum Law Group as class counsel;

C.     Awarding Plaintiffs and the Class damages in an amount to be proven at trial, along with costs, pre and post judgment interest, and attorneys' fees; and

D.     Awarding any further relief the Court deems just and proper.

Dated: February 11, 2016                    Respectfully submitted,


By:      s/ Eric M. Sodhi
         Eric M. Sodhi (FBN: 583871)
         esodhi@richmangreer.com
         Lyle E. Shapiro (FBN: 102324)
         lshapiro@richmangreer.com
         Joshua L. Spoont (FBN: 053263)
         jspoont@richmangreer.com
         **RICHMAN GREER, P.A.**
         396 Alhambra Circle
         North Tower, 14th Floor
         Miami, Florida 33134
         Telephone: (305) 373-4000
         Facsimile: (305) 373-4099

         -and-

         Sara E. Hanley (FBN: 107508)
         Randall C. Place (FBN: 229090)
         **Place and Hanley, LLC**
         1415 Panther Lane
         Naples, FL 34109
         sara_hanley@placeandhanley.com
         randall_place@placeandhanley.com

-and-

Darren C. Blum (FBN: 087173)
**Blum Law Group**
110 E. Broward Blvd.
Suite 1700
Ft. Lauderdale, FL 33301
blum@stockattorneys.com

*Attorneys for Plaintiffs on their own behalf
and on behalf of those similarly situated.*